UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 17-102-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FLAVIO IBANDA BERNAL, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Defendants Flavio Ibanda Bernal and Laura Perez-Reyes have filed a joint motion to suppress. [Record No. 27] The motion was referred to United States Magistrate Judge Robert Wier for review and issuance of a report and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). A lengthy evidentiary hearing was conducted on October 16, 2017, and reconvened on October 20, 2017. [Record Nos. 42; 49] Magistrate Judge Wier issued a Recommended Disposition on October 27, 2017, recommending that the defendants' motion be denied. [Record No. 56] The defendants have filed joint objections to that recommendation. [Record No. 58] Having reviewed the record along with the Recommended Disposition and objections, the Court agrees with the Magistrate Judge and will deny the relief requested by Bernal and Perez-Reyes.

## I.

The Recommended Disposition recounts the relevant facts brought out during the evidentiary hearing and which involve the police encounter with the defendants on the evening of July 25, 2017. In summary, law enforcement officers received information from a

confidential informant ("CI") that a shipment of drugs would be coming into the area and a transaction would occur at a McDonald's restaurant located on Stanton Way in Lexington, Kentucky. The courier was expected to arrive between 5:30 p.m. and 9:00 p.m. (approximately) in a vehicle with Illinois license plates. The arrival time was later pushed back after the CI apprised law enforcement of the whereabouts of the supposed courier. Around 9:15 p.m., Bernal and Perez-Reyes, driving a dark Honda Element with Illinois license plates, pulled into the Stanton Way McDonald's parking lot and proceeded inside.

Following the above-described surveillance, Kentucky State Police ("KSP") Trooper Lindon was instructed to make contact with the defendants, and he did so as they were leaving the restaurant. KSP Trooper Gabriel, a K-9 unit, arrived in a separate unmarked Tahoe within moments of Trooper Lindon and joined him in the ongoing conversation with the defendants. This conversation lasted for approximately 30 minutes, during which the two KSP Troopers were joined by DEA Task Force Officer Batista, after Trooper Lindon requested that a Spanish speaking officer assist in the communication with the defendants. Bernal purportedly gave oral consent in English, later purportedly confirmed in Spanish when TFO Batista arrived, for Trooper Lindon to search the vehicle.

The vehicle search did not begin until after Trooper Gabriel deployed K-9 Pluto who conducted an open-air sniff of the vehicle. This occurred approximately 30 minutes after the initial encounter. Pluto positively altered to the presence of narcotic odor near the driver's-side door of the vehicle. Trooper Lindon and Gabriel began searching the vehicle at this time. The Troopers immediately noticed abnormalities and modifications of the inside of the vehicle. However, after an initial inspection, they decided to move on to other areas of the vehicle and come back to the area that appeared modified. After a lengthy search that uncovered no

contraband, Trooper Lindon requested additional, nearby officers to assist in the search of the area that the Troopers believed to be modified. Approximately 15 minutes later, the officers discovered a hidden compartment containing a package that tested positive for heroin.

The defendants assert that there was no reasonable suspicion for an initial detention of the defendants upon their exiting of the McDonald's. They further contend that there was insufficient suspicion (either probable cause or new additional reasonable suspicion) to justify a prolonged detention while waiting for the Spanish speaking officer and canine unit to arrive. [Record No. 58]

## II.

### A. Trooper Lindon's Initial Encounter[1]

An officer may stop a person to briefly investigate suspicious circumstances if he has a reasonable suspicion that criminal activity is afoot. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002). In other words, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In addition, "any subsequent detention after the initial stop must not be excessively intrusive in that the officer's actions must be reasonably related in scope to circumstances justifying the initial interference." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir.1999), *cert. denied*, 528 U.S. 1176 (2000). However, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983); *see also United States v. Davis*, 430

---

[1] Whether the encounter was consensual, as the government argues, is not material. As explained below, Trooper Lindon effectuated the encounter with reasonable suspicion.

F.3d 345, 353-55 (6th Cir. 2005) (concluding that officers obtained reasonable suspicion "during the stop" to detain the defendant for an additional thirty to forty-five minutes before bringing a drug-sniffing dog).

"Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person of criminal activity." *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008) (citation, ellipsis, and internal quotation marks omitted). A determination regarding the existence of reasonable suspicion is based on the 'totality of the circumstances,' and a reviewing court 'view[s] the evidence offered in support of reasonable suspicion using a common sense approach, as understood by those in the field of law enforcement.'" *United States v. Collazo*, 818 F.3d 247, 257 (6th Cir. 2016) (citing *United States v. Richardson*, 385 F.3d 626, 630 (6th Cir. 2004)). Ultimately, "[r]easonable suspicion requires more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (citing *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008)). In assessing whether reasonable suspicion justifies a stop, the Court may consider information obtained from an informant. *See United States v. Jones*, 75 F. App'x 334, 338 (6th Cir. 2003). Looking at the "totality-of-the-circumstances," the Court considers the informant's reliability and basis of knowledge. *Illinois v. Gates*, 462 U.S. 213, 233 (1983).

Here, the defendants argue that the Magistrate Judge erroneously derived meaning from information provided to law enforcement by the CI. Specifically, they contend that the CI was unreliable because his information was vague regarding several specific details about the vehicle and the courier. This includes the fact that no mention was made: (i) of the color,

make, or model of the vehicle; (ii) of the ethnicity, age, or gender of the driver of the vehicle; and (iii) if the driver was traveling alone or with others. However, the defendants omit the fact that the CI was able to provide: (i) the exact date the delivery was scheduled to occur; (ii) the location; (iii) the initial time frame that was later updated to reflect the fact that the arrival time would be pushed back; (iv) the type of drugs being delivered; and (v) the fact that the vehicle would have Illinois license plates. Additionally, as the Magistrate Judge correctly noted, the CI was known and working with the Lexington Police Department and had previously worked with the DEA as a confidential source. Further, the information provided by the CI proved to be reliable. After independent police investigation and surveillance, the vehicle bearing Illinois license plates arrived at the intended destination and near the expected arrival time. *See e.g. Alabama v. White*, 496 U.S. 325, 331-32 (1990) (crediting an anonymous tipster's accurate prediction of future behavior as bolstering credibility so as to justify a *terry stop*.)

The initial encounter by Trooper Lindon was not based solely on a hunch; instead, the officer had reasonable suspicion of illegal drug trafficking activity in light of the "totality of the circumstances." The CI provided accurate information regarding the location, time, and licensing of the vehicle. Surveilling officers observed the defendants linger inside the McDonald's restaurant for approximately 45 minutes after finishing their meal. It was observed, at least twice, that Bernal stood up from the table, walked over to the window, and looked out in the direction of the vehicle. And Bernal was observed holding a cell phone in his hands as the family was lingering in the restaurant. While this activity – in isolation – would not be unusual, the Court considers the totality of circumstances presented. These actions, taken in conjunction with information provided by the CI, constitutes reasonable

suspicion for the initial encounter by Trooper Lindon.² *See United States v. Urrieta*, 520 F.3d 569, 580 (6th Cir. 2008) ("[W]hile any of these facts may not amount to reasonable suspicion on its own, taken together they do.")

### B. The Duration of the Encounter

While a brief investigatory detention under *Terry* may be constitutionally permissible initially, it can "become an impermissible 'seizure if it occurs over an unreasonable period of time or under unreasonable circumstances.'" *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (citing *United States v. Orsolini*, 300 F.3d 724, 729-30 (6th Cir. 2002). "Simply put, 'an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'" *Id*. (citing *Florida v. Royer*, 460 U.S. 491, 500 (1983).

The defendants argue that after the KSP troopers asked them if they were carrying any contraband, and both responded by "adamantly" denying any wrongdoing, reasonable suspicion evaporated and the defendants should have been free to go. [Record No. 58, pp. 6-7] However, this reasoning does not account for the all the circumstances the troopers observed during the investigatory detention that confirmed their suspicions. And it does not dispelled them.

Trooper Lindon testified that as he approached Bernal, Bernal's immediate reaction was to step away from him and avoid talking. Further, Bernal and Perez-Reyes gave inconsistent answers regarding why they were in Lexington, how long they were staying, and where they were here. The audio recording made by Trooper Lindon documents these inconsistencies and provides additional confirmation of the officers suspicion of ongoing

---

² Applying the collective knowledge doctrine, Trooper Lindon conducted the stop based on information obtained by fellow officers. *See Lyons*, 987 F.3d at 765-66.

criminal activity.³ Additionally, both Trooper Lindon and TFO Batista testified that Perez-Reyes hesitated when answering the question regarding whether heroin was in the vehicle. The Magistrate Judge noted that he "does not hear much (if any) pause, hesitation or breath." [Record No. 56, p. 6, Fn. 3] But while TFO Batista testified he could not hear any hesitation on the recording, he did state that he observed a slight hesitation coupled with her avoiding eye contact during his personal encounter.⁴

Coupled with the initial considerations for the encounter, these additional considerations strengthened the officers' reasonable suspicion. In other words, their suspicion was properly heightened, not dispelled, during the questioning of the defendants. The brief detention of approximately 30 minutes until the open-air dog sniff occurred did not constitute unreasonable delay under the circumstances presented. In fact, in light of the purported consent given to Trooper Lindon to search the car, the brief detention was conducted in an objectively reasonable manner. After the purported consent was given, not only did Trooper Lindon request a Spanish speaking officer to assist in communicating with the defendants to confirm that they were actually consenting to the search, he also used the available K-9 to establish independent probable cause to search the vehicle. As the Magistrate Judge correctly

---

³ The Magistrate Judge's Recommended Disposition cites numerous cases that stand for the proposition that inconsistencies in statements, changes in behavior, and overall suspect's movements are all relevant factors in the reasonable suspicion analysis. [Record No. 56, p. 21-22]

⁴ There is a slight difference between the answers given by Perez-Reyes. On the audio recording [Record No. 27, Exhibit #1, beginning at minute 24:34] the first question posed concerns marijuana. Her response comes during TFO Batista's translation of the question and is one in which she laughingly states no marijuana. The second question concerns cocaine. By this time, she is not laughing but she still answers the question before the translation is complete by TFO Batista. The last question, and the one at issue, concerns the heroin. This time, Perez-Reyes waits until TFO Batista has fully finished translating the question, and then provides her negative response.

notes, it was likely the interaction with Bernal giving purported consent to search and TFO Batista arriving at the scene to verify what was being said that reasonably contributed to the length of the investigatory detention.

### C. Other Objections

The defendants raise objections to the denial of their joint motion for discovery and joint motion to re-open the proof on the suppression. They argue that they were "deprived of a full and fair opportunity to litigate their motion to suppress." [Record No. 58, p. 9-10] And they specifically contend that they should have had an opportunity to rebut the Spanish to English translations made by TFO Batista during his direct examination during the hearing. [*Id*. at p. 10] The Court finds that these arguments are not well taken due to the fact that defendants had the opportunity to cross examine the witness during the hearing and in light of the forgoing analysis regarding reasonable suspicion. TFO Batista's translation, in regards to whether consent was given in Spanish, was not used by the Magistrate Judge to find a valid consent search. Instead, his analysis focused on the brief detention, based on reasonable suspicion, until the time open-air dog sniff occurred, which provided probable cause.

Additionally, the defendants argue they should have had time to explore the implication of a "newly discovered" CI. [*Id*.] The contention that the CI was newly discovered is neither correct nor based on the record. TFO Batista testified at the preliminary hearing that "[w]e received information from a DEA confidential source that a drug shipment was supposed to be arriving into the Lexington area, and the folks involved were coming from out of state, specifically Illinois." [Record No. 13, p.13, lines 5-9] Further, the defendants' joint motion

outlines the very same information. [Record No. 27, p. 2] This was not a newly discovered CI and the existence of the CI was not unknown to the defendants.

Finally, the defendants object to the Magistrate Judge's Order denying their joint motion for discovery regarding the CI. [Record No. 55] The Magistrate Judge found that, based on the representation by the United States, no such information sought existed, therefore the motion should be denied. [*Id*. at p. 2] The undersigned agrees. The United States cannot be compelled to produce materials that does not exist. As stated in the Order denying the motion, the United States remains under continuing duties as to Rule 16 and *Brady* and must supplement if and as required by case developments or further investigation.

### III.

For the reasons outlined above, it is hereby

**ORDERED** as follows:

1. The Recommended Disposition of Magistrate Judge Robert E. Wier [Record No. 56] is **ADOPTED** and **INCORPORATED** by reference.

2. The defendants' objections to the Recommended Disposition, denial of their motion to re-open the suppression proof, and denial of their motion for discovery regarding the CI [Record No. 58] are **OVERRULED**.

3. Defendants Flavio Ibanda Bernal and Laura Perez-Reyes' joint motion to suppress [Record No. 27] is **DENIED**.

This 22nd day of November, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge